IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MARSHALL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WELLS FARGO BANK,<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　　／ | No. C -13-01747 EDL<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO DISMISS** |

On March 28, 2013, Plaintiff Michael Marshall filed a complaint in Contra Costa County Superior Court against Defendant Wells Fargo Bank, N.A. (also known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A. and formerly known as Wachovia Mortgage FSB, which was in turn formerly known as World Savings Bank, FSB) ("Wells Fargo") and Cal-Western Reconveyance Corporation ("Cal-Western"). The complaint alleged state law claims for fraud, negligence, intentional infliction of emotional distress, wrongful foreclosure, violation of California Civil Code section 2924, and violation of California Business & Professions Code section 17200. Wells Fargo removed this matter to federal court on April 17, 2013 based on diversity jurisdiction.

On April 25, 2013, Wells Fargo filed a motion to dismiss Plaintiff's claims. On April 30, 2013, Plaintiff filed a motion to remand, arguing that the Court lacked subject matter jurisdiction because complete diversity of citizenship did not exist. Both motions have been fully briefed. Because these matters are appropriate for decision without oral argument, the Court vacated the June 18, 2013 hearing. For the reasons stated in this Order, Plaintiff's Motion to Remand is denied and Defendant's Motion to Dismiss is granted.

**Allegations from the complaint**

Plaintiff alleges that on August 9, 2007, Dorothy Marshall, Plaintiff's mother, executed a

Promissory Note and Deed of Trust in favor of World Savings, FSB in an amount of $600,000.00. Compl. ¶ 6. Plaintiff alleges that in September 2012, Plaintiff, as the Beneficiary of the trust where the Subject Property was held, inquired about modifying or restructuring the loan and submitted an application to modify the loan. Id. at ¶ 7. In November 2012, while the application was in active review, Plaintiff alleges that Defendant Cal-Western recorded a Notice of Default and Notice of Trustee's Sale. Id. at ¶¶ 8-9.

Plaintiff alleges that after Dorothy Marshall passed away in January of 2013, Plaintiff, who became the equitable owner of the property, contacted Defendant Wells Fargo to inquire about what effect her death would have on the loan modification application. Id. at ¶¶ 10-11. According to Plaintiff, Defendant Wells Fargo asked Plaintiff to provide an updated loan application and a copy of the death certificate which he did. Plaintiff alleges that Defendant Wells Fargo stated that the existing modification process would proceed. Id.

However, on March 14, 2013, Plaintiff alleges that his representative spoke with Defendant Wells Fargo about the progress of the application and Wells Fargo could not find the modification application. Id. at ¶ 13. Therefore, Defendant Wells Fargo allegedly requested that Plaintiff re-send the package. Id. Plaintiff's representative allegedly contacted Defendant Wells Fargo after the package was re-submitted and Defendant Wells Fargo stated that the application was already in the system and under active review. Id. at ¶ 14. Furthermore, Defendant Wells Fargo instructed Plaintiff's representative to request a postponement of the upcoming foreclosure sale. Id.

On March 19, 2013, Defendant Wells Fargo allegedly told Plaintiff's representative that the foreclosure sale would not be postponed because the bank would not proceed on a loan modification for a deceased homeowner. Id. at ¶ 16. Despite the fact that Plaintiff explained the situation and still had a modification application with his income alone under active review, Defendant allegedly stated that there could be no modification of the loan. Id. Plaintiff alleges that he had the funds available to bring the loan current and was denied the right to reinstate the loan prior to the foreclosure sale. Id.

2

**MOTION TO REMAND**

**1.   Legal standard**

"Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). Thus, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Id. (citation omitted). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id.; see also Abrego v. Dow Chemical Co., 443 F.3d 676, 685 (9th Cir. 2006). Removal jurisdiction may be based on diversity of citizenship or on the existence of a federal question. 28 U.S.C. § 1441. Whether removal jurisdiction exists must be determined by reference to the well-pleaded complaint. Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808 (1986).

**2.   Discussion**

Pursuant to 28 U.S.C. § 1348, all national banking associations are "deemed citizens of the States in which they are respectively located." Unlike 28 U.S.C. § 1332, § 1348 does not state that a national banking association "shall be deemed to be a citizen of any State . . . where it has its principal place of business. . . ." 28 U.S.C. § 1332(c)(1). The Supreme Court has interpreted this provision to mean that a national banking association is a citizen of the state where its articles of association designate its "main office," as opposed to being a citizen of every state in which it has a branch office. See Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 313-314 (2006). The Supreme Court observed:

> To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. See Horton v. Bank One, N.A., 287 F.3d 426, 431, and n. 26 (5th

> Cir.2004) ; Firstar Bank, N.A. v. Faul, 253 F.3d 982, 993-994 (7th Cir.2001). Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located." The absence of a "principal place of business" reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide.

Schmidt, 546 U.S. at n. 9. Accordingly, the Supreme Court did not decide whether a national bank is also a citizen of the state where its principal place of business is located. The Ninth Circuit has not addressed the issue since Schmidt. The circuits which have are split. See e.g., Wells Fargo Bank N.A. v. WMR e-PIN LLC, 653 F.3d 702, 710 (8th Cir. 2011) (holding that a national banking association's citizenship is solely the place where its "main office" is designated, and not its principal place of business); Horton v. Bank One, 387 F.3d 426, 436 (5th Cir. 2004) (holding that the "definition of 'located' is limited to the national bank's principal place of business and the state listed in its organization certificate and its articles of incorporation."); Firstar Bank v. Faul, 253 F.3d 982, 994 (7th Cir. 2001) ("Therefore, we hold that for purposes of 28 U.S.C. § 1348 a national bank is 'located' in, and thus a citizen of, the state of its principal place of business and the state listed in its organization certificate.").

Prior to Schmidt, however, the Ninth Circuit had held in American Surety Co. v. Bank of California, 133 F.2d 160, 162 (9th Cir. 1943) that for purposes of § 1348, "the 'States in which they (national banking associations) are respectively located' are those states in which their principal places of business are maintained," as opposed to every state in which the bank maintained a branch office. Thus, the American Surety court concluded that "[t]he trial court was right in holding that defendant is a citizen only of the state in which its principal place of business is located."

A number of district courts in this district, including this Court, have previously found that for purposes of diversity jurisdiction, a national bank is a citizen of the state in which its main office is located, not where it has its principal place of business. See, e.g., Tse v. Wells Fargo Bank N.A., 2011 U.S. Dist. LEXIS 6796, *5-6 (N.D. Cal. Jan. 19, 2011) ("Footnote 9 seems to

4

accept that in a small number of cases, the fact that corporations and national banks live by different citizenship rules will have some practical significance, however, scant. . . . Accordingly, the test for a national bank's citizenship under section 1348 is determined solely by the location of its main office designated in its articles of association."); DeLeon v. Wells Fargo Bank N.A., 729 F. Supp. 2d 1119, 1123-24 (N.D. Cal. 2010) ("Moreover, in footnote 9, the Court recognized the imperfect parity between corporations and national banks."); Ngoc Nguyen v. Wells Fargo Bank, N.A., 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010) (holding that Wells Fargo's citizenship was in the state where its main office was, as opposed to where its principal place of business was located). These cases concluded that Wells Fargo is a citizen solely of South Dakota, not of California. These cases rest on the conclusion that American Surety cannot be reconciled with Schmidt, and that therefore, Schmidt is controlling. See, e.g., Kim v. Wells Fargo Bank, 2012 WL 3155577, at *3 (N.D. Cal. Aug. 2, 2012) (denying motion to remand: "Because American Surety left no room for another basis of citizenship, including that promulgated by the Supreme Court, American Surety conflicts with Schmidt in such a way that harmonization of the two is impossible. . . . Schmidt, not American Surety, is controlling here."). Recently, however, some courts have concluded that Schmidt and American Surety can be reconciled by holding that a national bank is a citizen of both the state of its main office and the state of its principal place of business, even where they differ, based on a detailed examination of the relevant cases and legislative history. In Martinez v. Wells Fargo Bank, ___ F. Supp. 2d ___, 2013 WL 2237879 (N.D. Cal. May 21, 2013), the court undertook a thoughtful analysis of the issue of the citizenship of a national bank, including consideration of Schmidt as well as circuit authority and the legislative history of § 1348. The Martinez court concluded that Wells Fargo was a citizen of both its state of association (South Dakota) and its principal place of business (California). The Martinez court reasoned that:

> . . . Schmidt left open the possibility that a national bank could be deemed a citizen of the state of its principal place of business, a result consistent with American Surety. American Surety likewise did not rule out the possibility that citizenship could be located in the state of the national bank's main office as Schmidt held—that question was not presented in American Surety.

Id. at ¶ 6. The Martinez court joined and extended the analysis of the court in Taheny v. Wells Fargo Bank, 878 F. Supp. 2d 1093, 1100 (E.D. Cal. 2012), which held that: "Schmidt and

5

1  American Surety each identify a different possibility for citizenship - main office or principal place
2  of business - without excluding the other possibility." Taheny, 878 F. Supp. 2d at 1100; see also
3  Ramos v. Wells Fargo Bank, 2013 WL 2303243, at *1-2 (E.D. Cal. May 24, 2013); Ortiz v. Wells
4  Fargo Bank, 2013 WL 1702790, at *3-4 (S.D. Cal. Apr. 19, 2013); Grace v. Wells Fargo Bank, ___
5  F. Supp. 2d ___, 2013 WL 663169, at *3-4 (S.D. Cal. Feb. 21, 2013).

6      The question of a national bank's citizenship is a difficult one in light of Schmidt and the
7  split among the circuits on the issue. However, the weight of authority in this district is that Wells
8  Fargo is a citizen of South Dakota only, and this Court has previously so held. Absent further
9  direction from the Ninth Circuit or the United States Supreme Court, the Court declines to
10 reconsider its holdings in previous cases that Wells Fargo is a citizen of South Dakota only.
11 Accordingly, Plaintiff's Motion to Remand is denied.

**MOTION TO DISMISS**

**1.    Legal standard**

14     A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to
15 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)
16 (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's
17 "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in
18 the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th
19 Cir. 2008).

20     A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S.
21 Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be
22 supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying
23 pleadings that, because they are no more than conclusions, are not entitled to the assumption of
24 truth." Id.

25     Courts must then determine whether the factual allegations in the complaint "plausibly give
26 rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability
27 requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not
28 permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal

6

quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**2.     Discussion**

Defendant has moved to dismiss on several bases, but because preemption under the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1461-1468, is dispositive of all of Plaintiff's claims, the Court does not reach the other grounds for dismissal.

Pursuant to the Supremacy Clause, federal law preempts state law "when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Bank of America v. City and County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002). In the field of banking, Congress has created "an extensive federal statutory and regulatory scheme." Id. As part of this extensive federal scheme, Congress enacted HOLA during the Great Depression. See Silvas v. E*Trade Mortgage Co., 514 F.3d 1001, 1004 (9th Cir. 2008). The purpose of HOLA was to charter savings associations under federal law as a means of restoring public confidence through a nationwide system of savings and loan associations that are centrally regulated according to nationwide "best practices." Id. (citing Fidelity Fed. Saving and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 160-61 (1982)). Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing federal savings associations. See 12 U.S.C. § 1464; Silvas, 514 F.3d at 1005.

Defendant relies on 12 C.F.R. § 560.2 in support of its argument that the OTS regulations establish that state laws do not apply to the lending practices of federal banks and thrifts and "occup[y] the entire field of lending regulation for federal savings associations." 12 C.F.R. § 560.2(a). That regulation provides that "federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part." Id. A state law of general applicability can be preempted by HOLA if, as applied, it falls under section 560.2(b). See Silvas, 514 F.3d at 1006; Munoz v. Fin. Freedom Senior Funding Corp., 567 F.Supp.2d 1156, 1160 (C.D. Cal. 2008); see also Andrade v. Wachovia Mortgage, 2009 WL 1111182, at *2-3 (C.D. Cal. Apr. 21, 2009) ("Even state laws of

7

general applicability, such as tort, contract, and real property laws, are preempted if their enforcement would impact thrifts in areas listed in § 560.2(b). . . . Alternatively, such laws are preempted by HOLA if they have more than an incidental effect on the lending operations of a federal savings association. . . . State laws which do not affect lending practices might include tax statutes or zoning ordinances.") (internal citations omitted); Ayala v. World Sav. Bank, 616 F. Supp. 2d 1007, 1110-112 (C.D. Cal. 2009) (claims for quiet title, fraud, emotional distress and negligence preempted by HOLA); Kelley v. Mortgage Elec. Registration Sys., 642 F. Supp. 2d 1048, 1054 (N.D. Cal. 2009) ("Accordingly, to the extent plaintiffs' UCL, fraud, and conversion claims are based on allegations that the terms of plaintiffs' loan were unlawful and that plaintiffs did not receive sufficient disclosures about their mortgage, they are preempted by HOLA and are dismissed as to Aurora. If plaintiffs wish to reallege these claims against Aurora, they must reframe them in terms of HOLA violations and show that the statute provides a private right of action for the alleged violations.").

In Silvas, the Ninth Circuit set forth the analysis to follow in order to determine whether a state law is preempted. First, a court should determine whether the law is the type of law listed in Section 560.2(b). If it is, the analysis ends, and the law is preempted. See Silvas, 514 F.3d at 1005 (quoting OTS Final Rule, 61 Fed.Reg. 50951, 50966–67 (Sept. 30, 1996)). If the law in question is not listed in Section 560.2(b), a court should determine whether the law affects lending. If the answer is yes, then, pursuant to Section 560.2(a), a presumption arises that the law is preempted. Id. "This presumption can be reversed if the law can clearly be shown to fit within the confines of paragraph (c)," which is to be interpreted narrowly and doubts should be resolved in favor of preemption. Id.

Here, Defendant relies on two subsections of section 560.2(b) to argue that Plaintiff's claims are preempted. First, credit activities that states may not regulate include "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(10). In addition, preempted state laws include those that would impose requirements as to the "terms of credit," offered by a federal savings bank, "including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external

to the loan." 12 C.F.R. § 560.2(b)(4).

"State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section: (1) Contract and commercial law; (2) Real property law; . . . (4) Tort law; (5) Criminal law; and (6) Any other law that OTS, upon review, finds: (i) Furthers a vital state interest; and (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section." Id. § 560.2(c). OTS has stated "that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic state laws that undergird commercial transactions, not to open the door to state regulation of lending by federal savings associations." Lending and Investment, 61 Fed. Reg. 50951, 50966 (Sept. 30, 1996). Thus:

> When analysing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Id. at 50966-67. Further, "[e]ven state laws of general applicability, such as tort, contract, and real property laws, are preempted if their enforcement would impact federal savings associations in areas listed in § 560.2(b)." Stefan v. Wachovia, 2009 WL 4730904, at *3 (N.D.Cal. Dec.7, 2009) (holding all of plaintiffs' state law claims regarding the foreclosure process, such as wrongful foreclosure, and plaintiffs' claim that the terms of the loan were unconscionable, were preempted by HOLA).

Challenges to a bank's procedures concerning the loan modification process and a lender's rights to conduct a non-judicial foreclosure after attempts to collect mortgage payments are preempted pursuant to 12 C.F.R. § 560.2(b)(4) and (10). See Biggins v. Wells Fargo Bank, 266 F.R.D. 399, 417 (N.D. Cal. July 27, 2009) ("However, the Court notes that many of Plaintiffs' allegations relating to the breach of implied covenant, fraud and Section 17200, and unjust enrichment claims are premised upon allegations that the Defendants did not adequately disclose

9

1  certain information to them. Courts within this District and other Districts within California have
2  concluded that state law claims based on such allegations are preempted."); Zarif v. Wells Fargo
3  Bank, 2011 U.S. Dist. LEXIS 29867, at *8 (S.D. Cal. Mar, 23, 2011) ("As currently pled, each of
4  Plaintiffs' claims specifically challenge the processing of Plaintiffs' loan modification application
5  and servicing of Plaintiffs' mortgage, and fall within the specific types of preempted state laws
6  listed in § 560.2(b)(4) & (10)."); see also Baner v. Wells Fargo Bank, 2012 U.S. Dist. LEXIS
7  103737, at *9-10 (N.D. Cal. July 23, 2012) (finding that claims for breach of contract relating to
8  the loan modification, injunctive relief, declaratory relief and quiet title were preempted because
9  those claims are directed to 'terms of credit,' and/or 'processing, origination, servicing, sale or
10 purchase' of mortgages, they are preempted by 12 C.F.R. § 560.2(b)(4) and/or (10)); Vinal v.
11 Wells Fargo Bank, 2011 U.S. Dist. LEXIS 103013, at *12 (N.D. Cal. Sept. 13, 2011) ("Each of
12 Plaintiff's state law claims are based on an alleged failure to provide a loan modification or
13 foreclosure alternatives and thus relate to 'terms of credit' or 'processing, origination, servicing . . .
14 of . . .mortgages' and are therefore preempted."); Poco v. Wachovia Mortg. Corp., 2011 U.S. Dist.
15 LEXIS 71655, at *6, 15-16 (N.D. Cal. July 5, 2011) (finding that claims based on loan
16 modification procedures were preempted). In addition, HOLA preempts a borrower's claim that a
17 loan modification was likely and that the lender would suspend the foreclosure process while the
18 modification review was pending. See, e.g., Snyder v. Wachovia Mortg., 2010 U.S. Dist. LEXIS
19 68956, at *24 (E.D. Cal. July 9, 2010) ("Wachovia notes that the complaint's claims address
20 alleged failure to modify Mr. Snyder's loan and ensuing foreclosure. . . . HOLA preemption further
21 warrants dismissal of the complaint's claims given that they address loan modification and
22 co-signer requirements.").

23      Here, even though Plaintiff's claims are styled as torts, they are actually challenges to the
24 loan modification process. In the fraud claim, Plaintiff alleges that Defendant misrepresented to
25 Plaintiff that he qualified for and would receive a loan modification, and that he could do so despite
26 the death of his mother. Compl. ¶ 21. Plaintiff also alleges that: "Wells Fargo led Plaintiff through
27 a lengthy process that resulted in a default against ths Property that was engineered by the
28 fraudulent actions of Wells Fargo." Compl. ¶ 22. In the negligence claim, Plaintiff alleges that:

10

1  "Defendant Wells Fargo misrepresented to Plaintiff that he qualified for and would receive a loan
2  modification and that would occur in spite of his mother's passing." Compl. ¶ 28. He also alleges
3  that Defendant "admitted to internal errors in the servicing of Plaintiff's account." Compl. ¶ 29. In
4  the claim for intentional infliction of emotional distress, Plaintiff alleges that: "Defendant Wells
5  Fargo falsely represented to Plaintiff that he qualified for and would obtain a loan modification."
6  Compl. ¶ 34. Plaintiff also alleges that during the evaluation, "Wells Fargo continually harassed
7  Plaintiff by refusing to respond to the numerous inquiries regarding the status of the loan
8  modification application." Compl. ¶ 35. Plaintiff alleges that: "Wells Fargo repeatedly falsely
9  informed Plaintiff that his application was in active review and that the foreclosure sale of the
10 Subject Property would be postponed." Compl. ¶ 35. In Plaintiff's wrongful foreclosure claim,
11 Plaintiff alleges that: "Plaintiff was informed by the authorized Wells Fargo representatives
12 mentioned herein that no foreclosure proceedings would occur during the loan modification
13 process." Compl. ¶ 43. Plaintiff also alleges that: "Wells Fargo engineered a default against
14 Plaintiff through misrepresenting the loan modification process." Compl. ¶ 43. Finally, in
15 Plaintiff's claim for unfair competition, he alleges that: "Wells Fargo is in the routine practice of
16 fraudulently and/or negligently servicing home mortgage loans without informing homeowners of
17 the potential negative consequences connected with the loan modification process." Compl. ¶ 52.
18 Thus, all of Plaintiff's claims are challenges to the loan modification procedure, and therefore, are
19 preempted.

20     Plaintiff argues that HOLA does not apply to Defendant because it is a national association
21 governed by the Office of the Comptroller of Currency (OCC), not by the OTS. There is no
22 dispute that at the time that Plaintiff's mother consummated the loan with World Savings Bank,
23 FSB (Wells Fargo's predecessor), World Savings was a federal savings bank under the authority of
24 the Office of Thrift Supervision. The loan is therefore subject to HOLA, even though present-day
25 Wells Fargo is not chartered as a federal savings bank. See DeLeon v. Wells Fargo Bank, N.A.,
26 729 F.Supp.2d 1119, 1126 (N.D.Cal. 2010) ("Wells Fargo notes that at the time the loan was made
27 to the DeLeons, World Savings Bank, FSB was a federally chartered savings bank organized and
28 operating under HOLA and observes correctly that the same preemption analysis would apply to

11

any alleged conduct after November 1, 2009, when the lender merged into a national banking association."); Osorio v. Wachovia Mortg., FSB, 2012 WL 1610110, at *3 (S.D.Cal. May 8, 2012) ("Because Plaintiff's loan originated with World Savings Bank, FSB, which was a federal savings bank, Plaintiff's action is governed by HOLA.").

Therefore, Plaintiff's claims are preempted by HOLA. Defendant's motion to dismiss is granted with prejudice.

**IT IS SO ORDERED.**

Dated: June 27, 2013

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge